Green, J.
delivered the opinion of the court.
The bill charges that the complainant owns six hundred and seventy-one acres of land in Rutherford county defined by marked lines, and that he has been in possession of the same for sixteen years, under a deed from John Donelson, the grantee; that his deed calls to begin at Benjamin M’Cul-loch’s corner, a red oak, on Joseph L. Montfert’s north boundary line, near Bradley’s creek, on the north side; thence north one hundred and nineteen poles, &c. The south-west corner of the tract called for in the deed is described as a locust and iron-wood on Joseph Montfort’s north boundary line; thence along the lane east two hundred and seventy-eight poles to the beginning. The bill alleges that Sublett, the defendant, who owns the land on his south boundary line, in March, 1834, proceeded to run out his tract which he had purchased from James Gordon, being part of the Montfort tract. In running the north boundary of his tract, Sublett run over about twenty poles on complainant’s tract, taking in thirty acres or upwards of his land. The bill charges that Sublett declared he was running according to the calls of his deed, and insisted that all the land included in the lines which he was running belonged to him, and threatened to sue complainant if he did not surrender the possession to him. Sublett did not show his deed to complainant, but during some of the interviews he took out a paper which he said was his deed, and holding it in his hands, read a part *110 of it; but complainant charges tthat he did not read a de-of the land, or otherwise, did not read it correctly. Complainant had confidence in Sublett’s veracity, and did not SUSpect any misrepresentations as to the calls of the deed. Sublett declared he would sue if complainant did not surrender the land; expressed regret at having a law suit with a neighbor; and finally proposed that they should divide the land equally between them. Complainant’s neighbors, believing Sublett’s declarations, _advised him to accede to this proposition, which he thereupon agreed to do. A dividing line was accordingly run, giving to each party half the disputed land, of which the surveyor gave a certificate, which has been rigistered.
The bill charges that complainant has since discovered that Sublett’s deed does not cover any part of the land which was claimed and held by complainant, and that Sublett’s statement was untruly made, with a view to deceive and defraud him; that complainant's south boundary line, as described in his deed, is the identical line described in his'deed as his north boundary line, and each deed calls to begin on the same corner, Benjamin M’Culloch’s red oak. The bill prays that the agreement to divide the land maybe set aside, and that each party may be placed in the situation in which he stood before said agreement was made. The answer admits that the defendant, in running out his land, run over as much as twenty poles on the land claimed by the complainant, and admits he told complainant that his deed covered all the land he was running out. He admits that his deed calls to begin at M’Culloch’s red oak corner, and that a line ijun west from thence would not include the land in controversy; but E^eges that Gordon, from whom he purchased, showed him, and intended to sell him to Montfort’s line, as run and marked, by Bi'ashear in his processioning survey, and that he ought to go to Brashear’s line by the nearest route from the red oak corner, and thence west with said processioning line. He admits that the red oak corner was called for by mistake, and that he ought not to be hound down by it. He-denies all fraud, and insists that he read the calls of *111 his deed truly. He alleges that he has been in the possession of the land in dispute ever since he purchased of - Gordon, and that Gordon had been in possession of it for ten or fifteen years; so that his title would be better than complainant’s in* dependent of the compromise.
From the evidence it appears that there were two lines, twenty poles from each other, that had been run and marked as Montfort’s north boundary. M’Culloch’s red oak corner stood in the southmost end, and the other, twenty poles north of this, was called Brashear’s processioning line. Those who held under Montfort’s grant had contended for Brashear’s line, and those who held under Donelson insisted that the southmost line, in which M’Culloch’s corner stood, was the true one. About the time Sublett’s deed was made a Jjmajority of those acquainted with the boundary were of opinion the southmost line was the true one. The answer states that “M’Culloch had become willing to hold his tract in the Mont-fort grant by boundaries further south than he had formerly done.” Gordon too, from whom defendant purchased, had relinquished possession of part of the land between the two lines, which he had formerly held.
With these facts in view, there is no difficulty in determining what land is covered by the deed from Gordon to the defendant. ' It calls to begin “on a red oak, M’Culloch’s corner, running thence west with the north boundary line of Mont-fort’s original tract four hundred and ninety-two poles to a hickory, elm and red oak, being Montfort’s north-west corner; thence south,” &c. -If there had been but one line' known and claimed as being Montfort’s north boundary, the call for such old line would have been a controlling call; and although the corner called for as the beginning might be south of that line, the defendant would have been entitled to go to such old line from his corner, and thence along it, ds called for in the deed. But here there are two lines which have been designated as the “north boundary of Montfort’s original tract;” and the southmost one, to say the least of it, was as well known by that designation as the other. In this southmost line, it is admitted, stands “M’Culloch’s fed oak *112 corner.” When, therefore, Gordon, in his deed to defendant, calls for M’Culloch’s red oak corner, and running thence west with Montfort’s line, every word of the call may be complied wjth. If there were no such line from the red oak west, then the call for west and the call for Montfort’s line being contradictory calls, the call for the line would control the call for the course west. But here the plain sense of the call is, for the line known as Montfort’s north boundary, in which the corner called for stands. We think, therefore, most clearly, that Sublett’s deed does not cover airy of the land north of M’Culloch’s corner. We do not undertake to decide which of the disputed lines is the true one. For the pres* ent purpose, it is wholly unnecessary. If the dispute between the present parties had depended upon that question, it would have been a very proper subject for a compromise.
The next question is, what principles of law are applicable to these facts? That M’Adoo made the compromise under a mistake of the facts there is no doubt; whether Sublett mis-read the deed or not, the manner in which he did read it, together with his survey and claim of the land and threat to sue for it, unquestionably impressed upon M’Adoo the conviction that his deed covered the land in dispute, and that the old controversy about the line was to be revived. Under the influence of this belief, produced by his mistake as to the boundaries described in the deed, he made the compromise in question. This being the case, he is entitled to be relieved from the contract, and to stand' as though it had never been made. Even if the mistake had been mutual, if Sublett had been ignorant of the existence of the southmost line, and having been shown Brashear’s line by Gordon, believed it to be the line called for in the deed, still a contract made under such mutual mistake ought to be set aside. I Story’s Eq., sec. 142, et seq. It is not necessary that we should discuss the question of fraud'relied on by the complainant, inasmuch as the case may be disposed of on the ground above stated.
Let the decree be reversed, and decree that the compromise be set aside, and the .parties be placed in the situation they *113 occupied before it was made. The defendant will pay all the costs.
Note. — The court refused to quiet the title of complainant, as prayed for in the bill, but declared in the decree that “this decree is not to be set up to the prejudice of either party in any suit at law hereafter to be brought to settle the original rights to the land in controversy.”